IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Eddie G. Bennett, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 20-cv-50017 |
| v. ) | |
| ) | Mag. Judge Margaret J. Schneider |
| Wexford Health Source et al, ) | |
| ) | |
| Defendants ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Eddie Bennett ("Plaintiff"), brought this action under 42 U.S.C. § 1983, alleging that Defendants Isaacs, Larson, Allen, and Zahtz were deliberately indifferent to his serious medical needs [9]. The Defendants asserted the affirmative defense of failure to exhaust administrative remedies [34], [44]. On April 1, 2021, this Court conducted an evidentiary hearing on this affirmative defense pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). The parties consented to the jurisdiction of the Magistrate Judge for purposes of the *Pavey* hearing [66]. For the reasons stated below, the Court holds that Dixon Correctional Center's grievance procedure was unavailable to Plaintiff and as such he is excused from his obligation to exhaust his administrative remedies.

By 04/27/21, the parties are directed to file a proposed case management order, using the form available on Judge Schneider's webpage at www.ilnd.uscourts.gov. A future status hearing will be set by minute entry.

**BACKGROUND**

On January 9, 2020, Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Debbie Isaacs, Dr. Larson, Amber Allen, Dr. Zahtz, and Wexford Health Sources, Inc. ("Defendants") [1].[1] Plaintiff alleges he was denied adequate medical care when the treatment he had previously been receiving for an Achilles tendon injury at Big Muddy River Correctional Center ("BMRCC") was discontinued upon transfer to Dixon Correctional Center ("Dixon") [9]. Defendants answered the complaint and asserted the affirmative defense that Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The parties entered three grievances into evidence at the *Pavey* hearing. The first grievance was submitted by Plaintiff directly to the Illinois Department of Corrections Administrative Review Board ("ARB") on September 5, 2019 (the "First Grievance") [61-2, at 14]. Plaintiff complained that his care and treatment under Dr. Rowe and physical therapy at Crossroad

---

[1] On February 5, 2020, the Court recruited counsel [8].

Community Hospital had been improperly discontinued after he was transferred from BMRCC to Dixon on August 20, 2019 [*Id.*]. Plaintiff indicated on the First Grievance that the facility where the grievance issue occurred was BMRCC [*Id.*]. The ARB received the First Grievance on September 11, 2019 [*Id.*]. On September 12, 2019, the ARB Chairperson denied the grievance, stating that additional information was required, including: the "original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable" and "a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal, if timely." [61-2, at 13]. The ARB Chairperson also indicated, "[p]ersonal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board" and "Follow DR 504F" [*Id.*].

Upon receipt of the ARB instructions, Plaintiff resubmitted the First Grievance directly to the ARB (the "Second Grievance") [61-2, at 10]. This time, Plaintiff also checked off the box on the grievance form, indicating "expedite emergency grievance." [*Id.*]. On October 7, 2019, the ARB Chairperson again denied the grievance, indicating that the office had previously addressed the issue and that no justification was provided for additional consideration [61-2, at 9].

Plaintiff submitted a third grievance to Dixon grievance staff on November 10, 2019 (the "Third Grievance") [61-3, at 4]. Plaintiff complained that he was denied the option to see an orthopedic specialist for his Achilles injury and asked that he be returned to the care of Dr. Rowe [*Id.*]. Plaintiff indicated on the Third Grievance that the facility where the grievance occurred was Dixon [*Id.*]. Plaintiff also checked the box indicating that the Third Grievance was an emergency [*Id.*]. On November 15, 2019, Dixon grievance staff determined the Third Grievance was not an emergency and indicated that Plaintiff "should submit this grievance in the normal manner" [*Id.*].

Thereafter, on November 21, 2019, Plaintiff resubmitted the First Grievance to Dixon grievance staff and marked the grievance as implicating an "ADA Disability Accommodation" issue [61-6, at 3]. The grievance was later forwarded to the ADA committee.[2] On June 11, 2020, Plaintiff's grievance counselor received the grievance [61-6, at 3]. On September 4, 2020 the counselor responded to the First Grievance and noted that Dixon's ADA Committee determined that it did not present an ADA issue, and that Plaintiff had been referred for physical therapy [*Id.*].

Plaintiff testified credibly at the *Pavey* hearing that he filed the First Grievance pursuant to Dixon Institutional Directive No. 04.01.114 (the "Institutional Directive"), which was posted in the Dixon law library. Plaintiff believed it directed him to send the grievance directly to the ARB because it related to something that had happened at a different institution, his medical treatment at BMRCC.[3] The Institutional Directive sets forth:

> Offender grievances involving the following shall be exempt from
> local grievance procedures; such grievances must be sent directly to
> the Office of Inmate Issues for ARB proceedings . . .

---

[2] Plaintiff testified that he learned the grievance was forwarded to the ADA committee when he received it back months later, on September 4, 2020.
[3] Plaintiff further testified that when he sought help with filing his grievances from the clerks at the Dixon law library, they guided him to the Institutional Directive.

2

      a. Decisions regarding protective custody placement.
      b. Decisions regarding the involuntary administration of psychotropic medications.
      c. Decisions regarding disciplinary issues originating from a facility other than the facility where the offender is currently housed.
      **d. Decisions regarding other issues except personal property issues that pertain to a facility other than the facility where the offender is currently housed.**

[61-8, at 1-2] (emphasis added).

      Plaintiff explained that when he received the ARB's response, he was confused because he believed he had followed subsection (d) of the Institutional Directive, but he interpreted the instructions on the response to mean that he should have submitted the original form of the First Grievance, not a photocopy. Therefore, he resubmitted the original copy of that grievance to the ARB (the Second Grievance). Plaintiff stated that when the Second Grievance was denied, he did not understand why it was being denied, so he submitted it to Dixon grievance staff. He testified that thereafter, he submitted the Third Grievance as an emergency because he was in pain, and, he filed the subject complaint when he did not receive the Third Grievance back.

      When questioned about the First Grievance/Second Grievance, Plaintiff admitted that he was seeking a change in the course of treatment that he was receiving at Dixon, as well as treatment at BMRCC. He explained that he was following the Institutional Directive, which was posted in the law library at Dixon. When asked whether Dixon provided him with any other documents setting forth the rules for grievance procedures, Plaintiff responded that he had not received any additional documents.

      Defendants also called Travis Bayler, an ARB chairman, to testify at the hearing. With regard to the grievance procedure that inmates are required to follow, Mr. Bayler testified that the process is governed by 20 Illinois Administrative Code, Section 504(f), which the ARB refers to as Departmental Rule 504(f). The grievance process typically follows 3-steps. Offenders are supposed to first submit the formal grievance form to the grievance counselor at their facility, unless they believe it is an emergency. If they believe it is an emergency, they are to file the grievance form with the Chief Administrative Officer or their designee. If it is not an emergency, the grievance will be returned to the offender, who will be told to submit it in the normal manner, i.e. to the grievance counselor. If the offender does like the response from the grievance counselor, then it should be sent to the grievance office. If the offender does not like the response of the grievance office, at that point it should be sent to the ARB.

      Mr. Bayler testified that there are instances in which an inmate can file a grievance directly with the ARB, including: if they are seeking protective custody or relief regarding the administration of psychotropic medications; or if the matter concerns discipline or other situations—not including property or medical—that occurred at an institution where they are no longer in custody.

Mr. Bayler further testified about the difference between administrative directives and institutional directives. Administrative directives are overarching policies that apply to all correctional facilities. Institutional directives are policies that are prison specific, wherein each facility adopts their own directives that are unique to that institution. Mr. Bayler explained that when the ARB reviews a grievance, they review it first based on the administrative directives and would only look to institutional directives if the grievance was not otherwise covered by an administrative directive.

Mr. Bayler was asked to review the First and Second Grievances. With respect to the First Grievance, he testified that Plaintiff had failed to follow the proper procedure because he did not submit the original grievance with the grievance counselor's response or the response of the grievance office. Since it involved a medical issue, it needed to be addressed at the facility (Dixon) prior to being addressed by the ARB. In discussing the Second Grievance, Bayler testified that the grievance issue had been previously addressed, so there was no need for further review. On cross-examination, however, Mr. Bayler acknowledged that the institutional directive appeared to direct Plaintiff to file his grievances regarding medical treatment, at least as to treatment at BMRCC, with the ARB.

Defendants' last witness was Kimberly Hvarre, who previously served as a designee for the chief administrative officer at Dixon. Ms. Hvarre testified that when an emergency grievance is received by the designee and it is determined not to be an emergency issue, it is returned to the grievance officer who would return the grievance to the offender, and then the offender would have the opportunity to return it to the grievance counselor for non-emergency review. Ms. Hvarre was asked to review the Third Grievance. With respect to that grievance, she testified that she determined the grievance was not an emergency issue and returned it to the grievance officer to be provided back to the inmate with instructions on how to respond as a non-emergency grievance.

## LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") requires that inmates exhaust available administrative remedies prior to filing a federal lawsuit concerning prison conditions. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740; *Perez v. Wis. Dep't of Corr.*, 182 F.3d 535 (7th Cir. 1999). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). This includes "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). The procedures an inmate must take to exhaust administrative remedies are established by each institution. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). The Seventh Circuit requires compliance with the exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate "who does not properly take each step within the administrative process has failed to exhaust [administrative] remedies, and thus is foreclosed by § 1997e(a) from litigating." *Pozo*, 286 F.3d at 1024.

Because failure to exhaust administrative remedies is an affirmative defense, the burden is on the defendant to prove by a preponderance of the evidence that an administrative remedy was available to the plaintiff, and that the plaintiff failed to exhaust that remedy. *Jones v. Dart*, No. 14

4

C 1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016) (internal citations omitted).

While an inmate at Dixon, Plaintiff was required to follow a three-step grievance process. The three-step grievance process is set forth in the Inmate Handbook [61-7, at 32-33]. Inmates are directed first to deposit the grievance in the grievance box within each housing unit [61-7, at 32]. If the inmate is not satisfied with the counselor's response, he may then submit the matter to the grievance officer to be processed formally [61-7, at 33]. The grievance officer shall submit his findings and recommendations to the chief administrative officer, who is to make a determination and advise the inmate within two months, in accordance with the Institutional Directive. *Id.* Emergency grievances are to be expedited. *Id.* Thereafter, appeals from the chief administrative officer are to be filed with the ARB within 30 days of his or her decision. *Id.* Inmates were also made aware of the Institutional Directive via posting in the law library.

## DISCUSSION

Defendants argue that Plaintiff failed to exhaust his administrative remedies because all three grievances were defective. Defendants urge that the First Grievance and Second Grievance were sent directly to the ARB when they should have been processed internally by Dixon, and the First Grievance was later improperly marked an "ADA Accommodations" grievance which Plaintiff did not wait long enough to receive back before filing this lawsuit. Defendants further claim that the Third Grievance was improperly designated as an emergency and therefore did not proceed through the proper steps.

Plaintiff does not dispute that he filed his lawsuit before the First Grievance was returned. Instead, he argues that his failure to exhaust should be excused because: (1) he reasonably believed that the grievance procedure required him to file the grievance directly with the ARB; (2) he was unaware of the proper grievance procedure; and (3) he did not receive a timely response to the First Grievance.

With respect to the first argument, Defendants contend that Plaintiff's grievance pertained to the care that Plaintiff was receiving at Dixon, such that Plaintiff should have submitted it internally. Plaintiff argues that he submitted the First Grievance and Second Grievance directly to the ARB because the Institutional Directive set forth that issues that pertain to a facility other than the facility where the offender is currently housed should be filed directly with the ARB. The Court finds Plaintiff's argument to be credible and persuasive. As discussed above, Defendants presented evidence that part of the First Grievance/Second Grievance addressed the treatment Plaintiff was receiving at Dixon. However, aside from Plaintiff's testimony that, in part, he was complaining about the state of his treatment while at Dixon, the substance of both the grievance and the subject complaint contains complaints against both BMRCC and Dixon personnel. It does not necessarily follow that because Plaintiff was complaining about his care during his stay at Dixon, that his grievance did not pertain to issues other than medical treatment at Dixon. The Institutional Directive that Plaintiff was directed to follow stated that offender grievances involving decisions pertaining to a facility other than the one where the inmate is housed should be sent directly to the ARB. Thus, the Court concludes that Plaintiff reasonably believed that he was required to file the grievance with the ARB. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) ("Prisoners are required to exhaust grievance procedures they have been told about, but not

procedures they have not been told about."); *Ajala v. Tom*, 592 F. App'x 526, 528 (7th Cir. 2015) (where prison officials thwart inmates from exhausting, "the process that exists on paper becomes unavailable in reality").

As to the second argument, inmates are required to exhaust only the grievance procedures that are "available," within the meaning of the PLRA. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). "When administrative procedures are clearly laid out . . . an inmate must comply with them in order to exhaust his remedies." *Pavey*, 663 F.3d at 905; *see also Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) ("But 'unavailability' extends beyond 'affirmative misconduct' to omissions by prison personnel, particularly failing to inform the prisoner of the grievance process."); *Latin v. Johnson*, No. 18 C 02717, 2019 WL 5208856, (N.D. Ill. Oct. 16, 2019) (finding remedies unavailable where the plaintiff was not provided a handbook, the plaintiff testified he did not see the orientation video and was unaware how or where to access the handbook, and there was no other evidence that the plaintiff was informed that the handbook was available).

An inmate's subjective unawareness of a grievance procedure does not necessarily excuse non-compliance, so long as "the prison has taken reasonable steps to inform the inmates about the required procedures." *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). "Simply providing an inmate with an informational handbook outlining the grievance procedure has been deemed to be adequate notice." *Latin*, 2019 WL 5208856, at *16 (internal citation omitted). Further, posting the grievance procedure where a prisoner could reasonably be expected to see it would also suffice to make the procedure available. *Hall v. Sheahan*, No. 2000 C 1649, 2001 WL 111019, at *2 (N.D. Ill. Feb. 2, 2001).

The Court emphasizes that it is Defendants' burden to prove Plaintiff's failure to exhaust. "It [is] not [Plaintiff's] burden to establish that the grievance process was unavailable; it [is] the officers' burden to show that [Plaintiff] did not exhaust available remedies." *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018). The Court finds that Defendants have not met their burden.

In arguing that the grievance procedure was available to Plaintiff, Defendants claim that Plaintiff should have filed his grievance in accordance with Department Rule 504F, Ill. Admin. Code. § 504.800, *et seq*. (the "Administrative Rule"). Defendants claim that according to the Administrative Rule, offenders may only submit grievances directly to the ARB when grieving decisions regarding protective custody placement, the involuntary administration of psychotropic medication, disciplinary proceedings made at a facility other than where the offender is currently assigned, and "other issues that pertain to a facility other than where the offender is currently assigned, *excluding personal property **and medical issues***." 20 Ill. Admin. Code 504.870 (emphasis added).

Defendants do not dispute Plaintiff's testimony that he was only aware of the Institutional Directive when he filed the First Grievance. Instead, Defendants assert that Plaintiff should have known to first file the grievance internally. Defendants failed to present evidence that Plaintiff was informed by his facility about the grievance process. While Defendants admitted the Dixon Inmate Handbook into evidence, Defendants failed to establish that Plaintiff was provided with the handbook and that he knew to find the grievance procedures there. Notwithstanding, even if this were established at the hearing, the handbook includes similar language about "issues that

6

were initiated at a facility other than the currently assigned facility" [61-7, at 33-34]. In sum, unlike the Administrative Directive, both the handbook and Institutional Directive do not exclude medical issues in their definition of issues that pertain to a facility other than where the offender is currently assigned.

Defendants next point to the ARB reports concerning the return of the First Grievance and Second Grievance. The first report stated to provide: (1) the original written grievance, including the counselor's response, if applicable; and (2) a copy of the response to the grievance, including the grievance officer's and chief administrative officer's response to appeal [61-2, at 13]. The first report also provided that personal property and medical issues are to be reviewed at the inmate's current facility prior to review by the ARB and directed Plaintiff to follow "DR 504F". The second report merely stated that the ARB had already addressed the issue.

Plaintiff argues that upon receipt of the first report he still did not know that he had to file the grievance internally based on the instruction he had received from the Institutional Directive and he assumed that the request for the "original written grievance" meant that he should not have provided a photocopy. Plaintiff further argues that upon receipt of the second report he was still confused, which is why he filed the Third Grievance internally and assumed when it was rejected that it should have been submitted directly to the ARB per the directions he had received. The Court agrees that the ARB's instructions, without more, do not establish that Plaintiff knew that he had to file the grievance internally, particularly where the Institutional Directive appears to conflict with the instructions from the ARB. *See Ford*, 362 F.3d at 397 (emphasis added) ("In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the *prison's* grievance system.") Accordingly, Plaintiff understandably prioritized the instructions received from the prison.

Though Plaintiff was unaware of the requirement to file the First Grievance or Second Grievance internally, that does not end the inquiry. Plaintiff contends that he should not have been required to wait to file the subject lawsuit when he did not receive the First Grievance back after eventually filing it as an internal grievance but this time marking it as an ADA accommodation issue. It is Defendants' burden to demonstrate the failure to exhaust, and there is no record of whether Plaintiff had received a copy of his institution's handbook containing the grievance procedure. Even if Plaintiff had received the handbook, it states that staff "are to process informal grievances in a timely manner," and that appeals are to be filed within "30 days after the date of the local decision, not within 30 days of receipt of the response." [61-7, at 33]. By the time Plaintiff submitted the First Grievance internally, he had been attempting to have his issues addressed for over two months. Plaintiff filed the complaint after he did not receive a response for approximately 6 more weeks, approximately 4 months after trying to get his issues addressed. Ultimately, he did not receive a response for almost seven months. Plaintiff was understandably confused, given the conflicting directions he had been given, and he may have believed that if he did not file the complaint, it would have been untimely. *See*, *e.g., Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) (holding that because the prisoner properly followed procedure and prison officials were responsible for mishandling his grievance, it could not be said that he failed to exhaust his remedies, particularly where Dole had not been given instructions on how to proceed when his complaint went missing).

## CONCLUSION

      Thus, the Court holds that Defendants have not carried their burden of proving that administrative remedies were available to Plaintiff, because the evidence presented at the hearing did not show that Plaintiff understood that he had to file the grievance internally nor that Dixon took reasonable steps to inform Plaintiff about the required procedures. By 04/27/21, the parties are directed to file a proposed case management order, using the form available on Judge Schneider's webpage at www.ilnd.uscourts.gov

Date: April 13, 2021                                        ENTER:

                                                                                            *Margaret J. Schneider*
                                                                            United States Magistrate Judge