UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Eddie G. Bennett,<br><br>    Plaintiff,<br><br>    v.<br><br>Wexford Health Source et al.,<br><br>    Defendants. | Case No. 3:20-cv-50017<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Eddie G. Bennett,[1] a former Illinois prisoner, brings this action under 42 U.S.C. § 1983 against prison doctors, the corporation that employed them (Wexford Health Source), and other prison officials, alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Before the Court are two motions for summary judgment: one by Wexford and its employees, the other by employees of the Illinois Department of Corrections. For the following reasons, the motions are granted, and this action is terminated.

**I. Background**

On May 5, 2019, while imprisoned at Illinois' Big Muddy River Correctional Center, Eddie Bennett (as he would later discover) ruptured his right Achilles tendon while playing basketball. Defs.' 56.1 Statement of Material Facts (DSOF),

---

[1] In this action, Mr. Bennett was represented by assigned counsel: Timothy B. Cantlin. The Court thanks counsel for their time and efforts.

1

Dkt. 117 at ¶¶ 1, 5, 12. Dr. Dennis Larson, the prison's medical director, ordered over the phone (it was a Sunday) that Bennett be kept in the infirmary and given palliatives. *Id.* ¶¶ 6-7. He examined him the next morning, put his foot in a temporary cast, prescribed a more powerful pain medication, and submitted a request that Bennett be seen by an orthopedist as soon as possible. *Id.* ¶¶ 8-10. Before seeing the orthopedist, Larson saw him three more times; on the third visit, he prescribed him Ultram, an opioid, because of his continued complaints of pain. *Id.* ¶¶ 11-14.

On May 15, 2019, he saw an orthopedic surgeon, Dr. John Rowe. *Id.* ¶ 15. Rowe recommended against surgery for the Achilles rupture, telling Bennett that he would cast the foot. *Id.* ¶¶ 15-17. Larson saw him the next day; he prescribed more pain medication and arranged various accommodations for him. *Id.* ¶¶ 18-20. Over the next several months, Bennett began physical therapy as Rowe recommended, and had nearly a dozen follow-ups with Larson and Rowe; despite Bennett's continued complaints of pain, at no point did either of them conclude that the Achilles tendon was not healing well. *Id.* ¶¶ 21-39.

On August 20, 2019, Bennett was transferred to Illinois' Dixon Correctional Center, where he was initially prescribed more pain medication and had weekly physical therapy. *Id.* ¶¶ 40-43. In September, the nurse practitioner who was seeing Bennett requested that he be referred to another orthopedist for a follow-up regarding his Achilles tendon. *Id.* ¶ 44. Dr. Merrill Zahtz, one of the doctors at Dixon, participated in a "collegial review" with another Wexford physician after

2

examining Bennett, and they concluded that because he had reported decreased pain and the Achilles tendon was found to be healing well at his last visit with Rowe, another appointment with an orthopedist was unnecessary. *Id.* ¶¶ 45-47. Instead, they recommended, as Rowe had, that Bennett begin another course of physical therapy, which he did begin shortly thereafter. *Id.* ¶¶ 47-48. On January 10, 2020—after Bennett reported that he had ongoing weakness and pain in his right foot to another prison doctor—Zahtz participated in another collegial review that approved a referral to an orthopedist. *Id.* ¶¶ 51-52.

On March 11, 2020, Bennett was transferred back to Big Muddy River and did not see an orthopedist as had been approved. *Id.* ¶¶ 53-54. Larson saw him again at several appointments over the next few months, at which he adjusted his medications and referred him to the prison's physical therapist in light of his continuing complaints about ankle pain; he eventually reported the physical therapy helped with the pain. *Id.* ¶¶ 56-66.

On February 20, 2021, Larson had a collegial review with another Wexford physician about Bennett's continuing complaints of ankle pain, and they referred him to an orthopedist. *Id.* ¶ 67. On March 24, 2021, that orthopedist concluded that the Achilles tendon was well-healed and that his complaints of pain were only soluble by continued rehabilitation. *Id.* ¶¶ 68-69. Larson saw him again after that appointment, and consonant with the orthopedist's opinion, ordered more physical therapy, which Bennett received. *Id.* ¶¶ 70-71.

## II. Legal Standard

### A. Summary Judgment

A party is entitled to summary judgment when it demonstrates that there is no genuine dispute as to any material fact and judgment is proper as a matter of law. Fed R. Civ. P. 56. A fact is material when it could affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986), and a dispute is genuine when it could lead a reasonable jury to return a verdict in favor of the non-moving party. *Id.* The Court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences—but not every conceivable inference, *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987)—in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Smith v. Crounse Corp.*, 72 F.4th 799, 804 (7th Cir. 2023).

### B. Local Rule 56.1

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). Local Rule 56.1 requires a party seeking summary judgment to file an accompanying statement of facts, with numbered paragraphs and citations to the record supporting those facts. *See* LR 56.1(d). "District courts are 'entitled to expect strict compliance' with Rule 56.1, and do not abuse their discretion when they opt to disregard facts presented in a manner that does not follow the rule's instructions." *Gbur v. City of Harvey*, 835 F.

4

Supp. 2d 600, 606-07 (N.D. Ill. 2011); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

**III. Analysis**

**A. Section 1983**

42 U.S.C. § 1983 provides a claim against any person who, under color of a state's "statute, ordinance, regulation, custom, or usage" deprives any person of a right secured by the federal Constitution. 42 U.S.C. § 1983. Liability must be based on each defendant's knowledge and actions, *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012); *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009), which may include either direct participation in the "offending act," acting or failing to act with reckless disregard of someone's constitutional rights when under a duty to safeguard them, or allowing an offending act to occur with one's knowledge or consent. *Childress v. Walker*, 787 F.3d 433, 439-40 (7th Cir. 2015).

**B. Bennett's deliberate indifference claims fail for lack of evidence**

The Eighth Amendment prohibits deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A plaintiff must show evidence of a serious medical need, and that the defendant was subjectively aware of the specific, serious medical need or risk but disregarded it by "failing to take reasonable measures to abate it" to make out a claim of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834, 847 (1994).

A prison official can act with deliberate indifference only when he "*actually* [knows] of a substantial risk of harm." *Brown v. Osmundson*, 38 F.4th 545, 550 (7th

5

Cir. 2022). This requires an inquiry into his subjective state of mind; objective recklessness is not sufficient. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016); *Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot . . . be condemned as the infliction of punishment.").

Mere medical malpractice does not constitute deliberate indifference. *Estelle*, 429 U.S. at 106. Deliberate indifference is a demanding standard "because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022). It does not, however, require being ignored, for the provision of medical treatment can also constitute deliberate indifference if its risks were obvious—then, it becomes reasonable to infer that the prison official knew of the risk yet disregarded it. *Petties*, 836 F.3d at 729.

When a medical professional claims that the treatment he rendered issued from his medical judgment, that claim is owed deference as an assertion that he lacked a culpable mental state. *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016). Yet deference to a claim of medical judgment may be overcome by evidence—direct or circumstantial—that the medical professional did not honestly believe his own explanation, including by his persistence in a course of treatment known to be ineffective, or by a departure from the standard of care so radical that one may infer

6

that he did not exercise professional judgment at all. *Id.* at 805; *Thomas v. Martija*, 991 F.3d 763, 768 (7th Cir. 2021).

Bennett failed to comply with Local Rule 56.1, neither controverting the defendants' statements of facts nor filing his own. The Court therefore confines its analysis to the defendants' statements of facts, all of which are deemed admitted because of his failure to respond. LR 56.1(e)(3).

Both Larson and Zahtz assert that their treatment of Bennett was always dictated by their professional judgment. DSOF ¶¶ 74, 75. That assertion is entitled to deference and definitively forecloses a finding that they possessed the requisite mental state because nothing in the record suggests that they fell below the standard of care or that Bennett's course of treatment was known by them to be ineffective. True, Bennett criticizes various aspects of his course of care while imprisoned, including that he did not have follow-up appointments or start physical therapy as quickly as he ought to have, that he did not get as much physical therapy as he ought to have, and that he continued to have pain from his Achilles injury. *See* Pl.'s Resp., Dkt. 131 at 11, 13-16.

Under the Eighth Amendment, however, he was not entitled to any "specific care" or the "best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997), but only "adequate, minimum-level medical care." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Likewise, "to say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Nothing

7

suggests he did not receive adequate care. To the extent that he presents a theory of liability related to delays in treatment, there is also no evidence to support the notion that the defendants caused any delay, or that he suffered any harm from delay rather than the underlying condition, *see Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013); *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005)—indeed, the only evidence properly before the Court suggests the opposite. *See, e.g.*, DSOF ¶ 76. Bennett's claims against Larson and Zahtz therefore fail.

So too do his claims against Amber Allen and Debbie Isaacs, the Health Care Unit Administrators at Dixon and Big Muddy River, respectively. Dkt. 124 at ¶¶ 2, 4. Prison officials are entitled to rely on prison doctors' expertise and are not "chargeable with deliberate indifference" unless they know or have reason to believe that doctors are mistreating or failing to treat a prisoner. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). Because nothing in the record indicates that they were directly involved in his medical care or on notice about any of its alleged deficiencies, these claims fail.

### D. Bennett's *Monell* claim against Wexford fails because it is forfeit

Bennett makes no argument concerning Wexford's *Monell* liability in his response, so it is forfeited. *See Palmer v. Marion County,* 327 F.3d 588, 597 (7th Cir. 2003). Even if it were not forfeited, without having established any underlying constitutional violation, and without any evidence about which Wexford policy was allegedly unconstitutional or how it caused an injury, it would necessarily fail on the merits.

## IV. Conclusion

For the foregoing reasons, the defendants' motions are granted. The case is dismissed with prejudice.

Date: February 8, 2024

_____
Honorable Iain D. Johnston
United States District Judge